BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Avenue, 3rd Floor
Hackensack, New Jersey 07601
Phone: (302) 442-7063
Facsimile: (302) 442-7012
Email: kcapuzzi@beneschlaw.com

*Attorneys for Plaintiff NCR Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NCR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>TERAOKA SEIKO CO. LTD.,<br>a Japanese Company<br><br>Defendant &<br><br>DIGI AMERICA, INC.,<br><br>Defendant. | Case No.: ____________<br><br>**JURY TRIAL DEMANDED** |

**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiff NCR Corporation ("NCR") brings this patent infringement action against Defendant Teraoka Seiko Co. Ltd. ("Teraoka") and Defendant Digi America, Inc. ("Digi") (collectively, "Defendants") for their infringement of NCR's patents directed to produce weighing scale and electronic shelf label solutions.

## NATURE OF THE ACTION

1. This is a civil action arising under the laws of the United States, 35 U.S.C. § 1, *et seq.*, for patent infringement. Plaintiff NCR seeks damages and injunctive relief as provided in 35 U.S.C. §§ 281, 283–85, based on Defendants' infringement of U.S. Patent No. 6,412,694 ("the '694 patent"), U.S. Patent No. 6,877,133 ("the '133 patent"), 6,976,206 ("the '206 patent"), 7,007,219 ("the '219 patent"), 7,340,412 ("the '412 patent"), and 8,136,727 ("the '727 patent") (collectively, "the Patents-In-Suit").

## THE PARTIES

2. NCR is a corporation organized and existing under the laws of Maryland, having a principal place of business at 864 Spring St. NW, Atlanta, Georgia 30308. NCR is a global technology company that provides omni-channel solutions with its hardware, software and portfolio of services enabling transactions across financial, retail, hospitality, travel, telecom and technology industries including weighing scales and electronic shelf labels.

3. Teraoka is a corporation organized and existing under the laws of Japan, having a principal place of business at 13-12 Kugahara 5-chome Ohta-ku, Tokyo 146-8580.

4. Digi is a corporation organized and existing under the laws of New Jersey, having a principal place of business at 76 Veronica Avenue, Somerset, New Jersey 08873.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, namely 35 U.S.C. § 271 *et seq.*

6. This Court has subject matter jurisdiction over NCR's claims of patent infringement pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b). Teraoka is a foreign corporation. Digi resides in this District, has committed acts of infringement in this District, and has a regular and established place of business in this District. Therefore, venue is proper as to both Defendants.

8. Digi is subject to this Court's general jurisdiction because it is incorporated in New Jersey and maintains a principal place of business there. Teraoka is subject to this Court's specific jurisdiction because it conducts substantial business in New Jersey and this District, including: (1) conducting at least part of its infringing activities alleged herein; and (2) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods and services provided to New Jersey residents. For example, upon information and belief, Teraoka ships goods, including one or more of the accused products, into this District. Therefore, personal jurisdiction over Teraoka is proper under the New Jersey long-arm statute because it has minimum contacts with this District such that the exercise of personal jurisdiction over Teraoka would not offend traditional notions of fair play and substantial justice.

## THE PATENTS-IN-SUIT
## U.S. PATENT NO. 6,412,694

9. United States Patent No. 6,412,694 ("the '694 patent"), entitled "Produce Recognition System and Method Including Weighted Rankings," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on July 2, 2002. A true and correct copy of the '694 patent is attached to this Complaint as Exhibit A. The '694 patent is assigned to NCR, which owns all rights, title, and interest in the '694 patent necessary to bring this suit for infringement.

10. The ’694 patent describes in detail and claims in various ways inventions in systems and methods for an improved produce recognition system.

**U.S. PATENT NO. 8,136,727**

11. United States Patent No. 8,136,727 (“the ’727 patent”), entitled “Produce Weighing Scale with a Camera and Methods of Operating a Produce Weighing Scale Having a Camera,” was duly and legally issued by the USPTO on March 20, 2012. A true and correct copy of the ’727 patent is attached to this complaint as Exhibit B. The ’727 patent is assigned to NCR, which owns all rights, title, and interest in the ’727 patent necessary to bring this suit for infringement.

12. The ’727 patent describes and claims a produce weighing scale that includes an improved produce recognition system.

**U.S. PATENT NO. 6,877,133**

13. United States Patent No. 6,877,133 (“the ’133 patent”), entitled “Methods and Apparatus for Error Detection and Correction in an Electronic Shelf Label System,” was duly and legally issued by the USPTO on April 5, 2005. A true and correct copy of the ’133 patent is attached to this complaint as Exhibit C. The ’133 patent is assigned to NCR, which owns all rights, title, and interest in the ’133 patent necessary to bring this suit for infringement.

14. The ’133 patent describes in detail and claims in various ways inventions in systems, methods, and apparatuses for error detection and correction in an electronic shelf label (ESL) system.

**U.S. PATENT NO. 7,340,412**

15. United States Patent No. 7,340,412 ("the '412 patent"), entitled "Methods and Apparatus for Performing Delta Updates of an Electronic Shelf Label," was duly and legally issued by the USPTO on March 4, 2008. A true and correct copy of the '412 patent is attached to this complaint as Exhibit D. The '412 patent is assigned to NCR, which owns all rights, title, and interest in the '412 patent necessary to bring this suit for infringement.

16. The '412 patent describes in detail and claims in various ways inventions in systems and methods for performing a delta update of an ESL.

**U.S. PATENT NO. 7,007,219**

17. United States Patent No. 7,007,219 ("the '219 patent"), entitled "Methods and Apparatus for Error Detection and Correction of an Electronic Shelf Label System Communication Error," was duly and legally issued by the USPTO on February 28, 2006. A true and correct copy of the '219 patent is attached to this complaint as Exhibit E. The '219 patent is assigned to NCR, which owns all rights, title, and interest in the '219 patent necessary to bring this suit for infringement.

18. The '219 patent describes in detail and claims in various ways inventions in systems, methods, and apparatuses for detecting and correcting data errors in ESL's registers or memory.

**U.S. PATENT NO. 6,976,206**

19. United States Patent No. 6,976,206 ("the '206 patent"), entitled "Methods and Apparatus for Intelligent Data Bedcheck of an Electronic Shelf Label," was duly and legally issued

by the USPTO on December 13, 2015. A true and correct copy of the ’206 patent is attached to this complaint as Exhibit F. The ’206 patent is assigned to NCR, which owns all rights, title, and interest in the ’206 patent necessary to bring this suit for infringement.

20. The ’206 patent describes in detail and claims in various ways inventions in systems, methods, and apparatuses for intelligent data bedcheck of an ESL.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 6,412,694

21. NCR incorporates by reference the allegations in paragraphs 1 through 20 as if fully set forth herein.

22. On information and belief, Defendant Digi has infringed at least claim 1 of the ’694 patent by importing, using, directing others to use, offering for sale, and/or selling weigh scales, including, but not limited to, the SM-5600BS Camera Scale (“Accused Scale”) that perform the method of at least claim 1 of the ’694 patent in the United States.

23. Claim 1 of the ’694 patent recites:

A method of identifying a produce item comprising the steps of:

collecting produce data from the produce item;

comparing the produce data to reference produce data to obtain a list of candidate identifications with first rankings based upon probability of match;

determining weights for the candidate identifications based upon numbers of times the candidate identifications were correct identifications and were displayed in predetermined operator selection screen locations during past recognition events;

applying the weights to the candidate identifications to obtain second rankings;

displaying the candidate identifications in order of the second rankings; and

recording an operator selection of one of the candidate identifications.

24. The Accused Scale, shown in FIG. 1 below[1], infringes at least claim 1 of the ’694 patent.




FIG. 1

25. The Accused Scale performs a method of identifying a produce item. As described in the product literature, the Accused Scale “uses a built-in camera to identify fruits and vegetables.”[2]

26. The Accused Scale collects produce data from a produce item. As described in the product literature, the Accused Scale uses the “built-in camera” to collect data regarding items placed on a scale, such as a bag of apples, as shown in FIG. 2 below, performs “intelligent colour and shape recognition,” and facilitates the identification of items.”[3]

---

[1] https://www.digisystem.com/products/PRD00297 (last visited June 1, 2018) and https://www.digisystem.com/products/PRD00297/product_file/file/SM-5600BS_B_0814.pdf (last visited June 1, 2018) (Attached hereto as Exhibit G).

[2] *Id.*

[3] *Id.*




FIG. 2

27. The Accused Scale compares the produce data to reference produce data to obtain a list of candidate identifications with first rankings based upon probability of match. As described in the product literature, and shown in FIG. 3 below, the Accused Scale compares collected produce data, *e.g.*, data relating to color and shape, to reference data to obtain a first list of candidates representing the closest matches for presentation to and selection by a user.[4] "The built-in camera with intelligent colour and shape recognition provides users with quick access to the selected item. This feature narrows down the PLU selection to the closest match, further reducing search time and error."[5]

---

[4] *Id.*
[5] *Id.*




Select the correct icon. Camera recognises product and provides the closest match.

FIG. 3

28. The Accused Scale determines weights for the candidate identifications based upon number of times the candidate identifications were correct identifications and were displayed in predetermined operator selection screen locations during past recognition events. As described in the product literature and shown in FIG. 3 above, the Accused Scale uses "advanced artificial intelligence" to "learn and improve accuracy with increased usage" and thereby, on information and belief, determining updated weights for candidate identifications based upon numbers of times the candidate identifications were correct identifications and were displayed in predetermined operator selection screen locations during past recognition events.[6] "SM-5600BS CAMERA [the Accused Scale] uses a built-in camera to identify fruits and vegetables. With its advanced artificial intelligence learning system, the scale can learn and improve accuracy with increased usage."[7]

29. On information and belief, the Accused Scale applies the weights to the candidate identifications to obtain second rankings. As described in the product literature and shown in FIG. 3 above, in learning to "improve accuracy with increased usage," the "advanced artificial

[6] *Id.*
[7] *Id.*

intelligence" of the Accused Scale applies updated weights to candidate identifications to obtain second rankings to provide users of the scale the "closest match."[8] "With its advanced artificial intelligence learning system, the scale can learn and improve accuracy with increased usage."[9]

30. The Accused Scale displays the candidate identifications in order of the second rankings. As described in the product literature and shown in FIG. 3 above, the Accused Scale displays the candidate identifications in order of the updated second rankings resulting from the advanced artificial intelligence learning to provide the operator the "closest match" for selection.[10]

31. The Accused Scale records an operator selection of one of the candidate identifications. As described in the product literature and shown in FIG. 3 above, the Accused Scale records an operator selection of one of the candidate identification, *e.g.*, the selected "icon."[11]

32. On information and belief, Defendant Digi, either alone or in conjunction with others, has in the past and continues to directly infringe and/or induce the infringement of at least claim 1 of the '694 patent by making, using, selling, offering to sell, and/or importing, or causing others to make, use, sell, or offer to sell, and/or import, in this judicial district and/or elsewhere in the United States, the Accused Scale that alone or in use is covered by at least claim 1 of the '694 patent.

33. As set forth above, Defendant Digi directly infringes at least claim 1 of the '694 patent in violation of 35 U.S.C. § 271(a) by operating the Accused Scale in a manner that performs the method required by claim 1 of the '694 patent.

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

34. Defendant Digi provides instructions including, but not limited to, product and instruction manuals, that instruct how to use the Accused Scale in a manner that infringes at least claim 1 of the ’694 patent. At least from the time of receipt of the complaint, Defendant Digi has provided such instructions with knowledge that such activities encourage users to operate the Accused Scale in a manner that directly infringes the ’694 patent.

35. On information and belief, Defendant Digi indirectly infringes at least claim 1 of the ’694 patent in violation of 35 U.S.C. § 271(b) by inducing users of the Accused Scale to directly infringe at least claim 1 by causing the Accused Scale to operate in accordance with Digi’s instructions according to the method of claim 1 of the ’694 patent.

36. Therefore, Defendant Digi infringes at least claim 1 of the ’694 patent in violation of 35 U.S.C. § 271.

37. Plaintiff has been harmed and continues to be harmed by Defendant Digi’s past and ongoing infringement of the ’694 patent.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 8,136,727

38. NCR incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

39. On information and belief, Defendant Digi and Defendant Teraoka have infringed at least claim 5 of the ’727 patent by importing, using, directing others to use, offering for sale, and/or selling the Accused Scale.

40. Claim 5 of the ’727 patent recites:

> A produce weighing scale in a produce section which is remote from a store exit section of a retail grocery store, the produce weighing scale comprising:
>
> a base;

a weighing platform disposed on the base;

a user interface arranged to enable a retail customer in the produce section of the retail grocery store to interact with the produce weighing scale;

a first support arm which extends substantially vertically from the base;

a second support arm which extends substantially transverse relative to the first support arm and which extends substantially horizontally relative to the weighing platform;

an actuatable picture camera disposed at a distal end of the second support arm and positioned over the weighing platform and for, when actuated, capturing at least a partial electronic picture of a produce item which has been placed on the weighing platform; and

electronic control circuitry including (i) a communications circuit which can electronically communicate over a store communications network with a communications circuit of a self-service checkout pay station in the store exit section of the retail grocery store, and (ii) an electronic processor which is arranged to provide an actuation signal to actuate the picture camera to capture at least a partial electronic picture of a produce item which has been placed by a retail customer on the weighing platform.

41. The Accused Scale is a produce weighing scale in a produce section which is remote from a store exit section of a retail grocery store. As described in the product literature and shown in FIG. 1 above, the Accused Scale is a "[s]olution for [a] produce area" and allows a user to "[g]et a label for a quick checkout" at the store exit remote from the product section.[12] As described in the product literature, the Accused Scale "provides [a] comfortable self-service experience."[13]

---

[12] https://www.digisystem.com/business/retail/ (last visited June 1, 2018) and https://www.digisystem.com/products/PRD00297/specification (last visited June 1, 2018).
[13] *Id.*

42. The Accused Scale includes a base and a weighing platform disposed on the base. As described in the product literature and shown in FIG. 4 below, the Accused Scale includes a base and a weighing platform disposed on the base.[14]




FIG. 4

43. The Accused Scale includes a user interface arranged to enable a retail customer in the produce section of the retail grocery store to interact with the produce weighing scale. As described in the product literature and shown in FIG. 5 below, the Accused Scale includes a user interface for a customer to interact with such that the customer could "[t]ouch the picture" matching the item placed on the scale.[15]

[14] https://www.digisystem.com/products/PRD00297/specification/ (last visited June 1, 2018).
[15] https://www.digisystem.com/products/PRD00297/product_file/file/SM-5600BS_B_0814.pdf.




FIG. 5

44. The Accused Scale includes a first support arm which extends substantially vertically from the base. As described in the product literature and shown in FIG. 4 above, the Accused Scale includes a first support arm extending substantially vertically from the base.[16]

45. The Accused Scale includes a second support arm which extends substantially transverse relative to the first support arm and which extends substantially horizontally relative to the weighing platform. As described in the product literature and shown in FIG. 4 above, the Accused Scale includes a second support arm which extends substantially transverse to the first support arm, and horizontal relative to the weighing platform.[17]

46. The Accused Scale includes an actuatable picture camera disposed at a distal end of the second support arm and positioned over the weighing platform and for, when actuated,

[16] https://www.digisystem.com/business/retail/ (last visited June 1, 2018) and https://www.digisystem.com/products/PRD00297/specification (last visited June 1, 2018).
[17] *Id.*

capturing at least a partial electronic picture of a produce item which has been placed on the weighing platform. As described in the product literature and shown in FIG. 4 above, the Accused Scale "uses a built-in camera" disposed at an end of the second support arm that is located over the weighing platform to "identify fruits and vegetables" placed thereon.[18]

47. On information and belief, the Accused Scale includes electronic control circuitry that includes (i) a communications circuit which can electronically communicate over a store communications network with a communications circuit of a self-service checkout pay station in the store exit section of the retail grocery store, and (ii) an electronic processor which is arranged to provide an actuation signal to actuate the picture camera to capture at least a partial electronic picture of a produce item which has been placed by a retail customer on the weighing platform.

48. As described in the product literature, the Accused Scale includes an "Ethernet 10/100 Base T" communications circuit that can electronically communicate over a stores communication network with a communications circuit of a self-service checkout pay station.[19] It also includes an "Intel Core 2 Duo T7400" processor that is arranged to actuate the camera to take a picture of a produce item, *e.g.*, a bag of apples, placed on the weighing platform (*see*, *e.g.*, STEP 1: WEIGH, as shown in FIG. 2 above) in order to recognize, and thereby direct a user to select an icon representing, the correct produce item, *e.g.*, the particular type of apple, identified from the picture (*see*, *e.g.*, STEP 2: SELECT, as shown in FIG. 3 above).[20]

49. On information and belief, Defendant Digi and Defendant Teraoka, either alone or in conjunction with others, have in the past and continue to infringe at least claim 5 of the '727

---

[18] https://www.digisystem.com/products/PRD00297/specification/ (last visited June 1, 2018) and https://www.digisystem.com/products/PRD00297/ (last visited June 1, 2018).
[19] *Id.*
[20] https://www.digisystem.com/products/PRD00297/product_file/file/SM-5600BS_B_0814.pdf.

patent by making, using, selling, offering to sell, and/or importing, or causing others to make, use, sell, or offer to sell, and/or import, in this judicial district and/or elsewhere in the United States, the Accused Scale that is covered by at least claim 5 of the ’727 patent.

50. As set for above, Defendant Digi and Defendant Teraoka directly infringe at least claim 5 of the ’727 patent in violation of 35 U.S.C. § 271(a) by importing, selling, offering for sale, and/or using the Accused Scale.

51. Plaintiff has been harmed and continues to be harmed by the Defendants’ past and ongoing infringements of the ’727 patent.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 6,877,133

52. NCR incorporates by reference the allegations in paragraphs 1 through 51 as if fully set forth herein.

53. On information and belief, Defendant Digi has infringed at least claim 1 of the ’133 patent by importing, using, directing others to use, offering for sale, and/or selling electronic shelf label (ESL) systems, including but not limited to, the T@POP Electronic Shelf Label System (“Accused ESL System”), that perform the method of at least claim 1 of the ’133 patent.

54. Claim 1 of the ’133 patent recites:

A method of automatically detecting and correcting errors in an electronic shelf label (ESL), the ESL comprising ESL registers, the ESL registers storing data controlling the content and formatting of information displayed by the ESL, the method comprising the steps of:

(a) providing an ESL data file comprising a data image of the intended contents of the ESL's registers;

(b) calculating a sumcheck of at least a portion of the data image by an ESL computer;

(c) transmitting a bedcheck message to the ESL by the ESL computer, the bedcheck message including the sumcheck;

(d) receiving bedcheck message by the ESL;

(e) comparing the received sumcheck with a sumcheck calculated using a portion of the actual contents of the ESL's registers, by ESL control circuitry;

(f) transmitting a positive acknowledgement message from the ESL to the ESL computer, if the received sumcheck matches the sumcheck calculated using the actual contents of the ESL's registers;

(g) transmitting a negative acknowledgment message to the ESL computer, if the received sumcheck does not match the sumcheck calculated using the actual contents of the ESL's registers; and

(h) transmitting at least one message to the ESL updating the ESL's registers with the data image contained in the ESL data file, if a negative acknowledgement is received by the ESL computer.

55. The Accused ESL System performs a method of automatically detecting and correcting errors in an ESL. As described in the product literature, the Accused ESL System performs a method of automatically detecting and correcting errors in an ESL.[21]

56. The Accused ESL System includes ESL registers, which store data controlling the content and formatting of information displayed by the ESL. As described in the product literature

[21] https://www.slideshare.net/OuzGARSLAN/digi-esl (last visited June 1, 2018) (attached hereto as Exhibit H).

and as shown in FIG. 6 below, the Accused ESL System includes an ESL comprising ESL registers.[22] The ESL registers of the Accused ESL System store data controlling the content and formatting of information displayed by the ESL, *e.g.*, data controlling the content of "Monthly Special" formatted for display in reverse print and a price of "$15.99" formatted for display in standard print, as shown in FIG. 6 below.[23]




FIG. 6

57. On information and belief, the Accused ESL System provides an ESL data file comprising a data image of the intended contents of the ESL's registers. As described in the product literature and as shown in FIG. 6 above, the Accused ESL System provides a data file, which comprises a data image of the intended contents of the ESL's registers for display by the ESL, *e.g.*, "Monthly Special" for display in reverse print and a price of "$15.99" for display in standard print.[24]

58. On information and belief, the Accused ESL System calculates a sumcheck of at least a portion of the data image by an ESL computer. As described in the product literature, the Accused ESL System calculates a sumcheck of at least a portion of the data image via a computer, *e.g.*, an ESL computer.[25] The use of a sumcheck is desirable to at least ensure that the information, *e.g.*, a price, stored for display in the registers of the ESL is accurate and to efficiently manage

[22] *Id.* at Slide 6.
[23] *Id.* at Slide 6.
[24] *Id.* at Slide 6.
[25] *Id.* at Slides 10 and 17.

bandwidth, minimize the time required to make changes, and maximize a battery life span of the ESL, which varies with the frequency of updates and the amount of data transmitted in making and validating them.[26] As described in the product literature, the Accused ESL System uses a "2-way digital communication [approach to provide]. . . . a 100% integrity on price change" and has a "[b]attery [l]ife [s]pan [of about] 5-6 [y]ears with 2 updates per day."[27]

59. On information and belief, the Accused ESL System transmits a bedcheck message that includes the sumcheck to the ESL by the ESL computer. As described in the product literature and as shown in FIG. 7 below, the Accused ESL System utilizes wireless protocols, which have inherently high bit error rates, and as such, the Accused ESL System transmits a bedcheck to an ESL to verify that the contents of the ESL's registers match the expected contents.[28] On information and belief, the Accused ESL System includes an ESL computer that transmits a bedcheck message to the ESL to ensure the accuracy of the information stored in its registers, *e.g.*, the stored price, matches the intended contents, *e.g.*, the intended price, of the bedcheck message including the sumcheck in order to obtain the bandwidth, time, and battery life span benefits described with respect to the preceding limitation.[29] The "ESL system [Accused ESL System] ensures that the prices amendments are prompt and accurate."[30]

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at Slides 10 and 17, https://www.digisystem.com/us/products/category/002/ (last visited June 1, 2018) and https://www.digisystem.com/us/products/PRD00261/ (last visited June 1, 2018).
[29] *Id.*
[30] *Id.*




FIG. 7

60. On information and belief, the Accused ESL System receives the bedcheck message by the ESL. As described in the product literature and as shown in FIG. 7 above, on information and belief, the Accused ESL System receives the bedcheck message sent to it according to the preceding limitation in order to verify the actual ESL contents, *e.g.*, the stored price, matches the intended contents, *e.g.*, the intended price, and thereby ensures “100% integrity” on price changes.[31]

61. On information and belief, the Accused ESL System compares the received sumcheck with a sumcheck calculated using a portion of the actual contents of the ESL’s registers by ESL control circuitry. As described in the product literature, on information and belief, the Accused ESL System compares the received sumcheck representing a portion of the intended contents of the ESL, *e.g.*, the intended price, with a sumcheck calculated using a portion of the actual contents of the ESL, *e.g.*, the stored price.[32] On information and belief, the Accused ESL

[31] *Id.*
[32] https://www.digisystem.com/us/products/category/002/ (last visited June 1, 2018).

System verifies that the ESL content matches the intended content, and thereby ensures "that price amendments are prompt and accurate."[33]

62. On information and belief, the Accused ESL System transmits a positive acknowledgement message from the ESL to the ESL computer if the received sumcheck matches the sumcheck calculated using the actual contents of the ESL's registers. As described in the product literature and as shown in FIG. 7 above, the Accused ESL System transmits a positive acknowledgement message from the ESL to the ESL computer, if the received sumcheck matches the calculated sumcheck to verify that the ESL actual contents, *e.g.*, the stored price, match the intended contents, *e.g.*, the intended price. "The tags acknowledge each update ensuring correct information and feedback."[34]

63. On information and belief, the Accused ESL System transmits a negative acknowledgment message to the ESL computer, if the received sumcheck does not match the sumcheck calculated using the actual contents of the ESL's registers. As described in the product literature, and as shown in FIG. 7 above, the Accused ESL System transmits a negative acknowledgment message to the ESL computer if the received sumcheck representing, *e.g.*, the intended price, does not match the calculated sumcheck representing, *e.g.*, the stored price, in order to identify and permit the correction of errors, and thereby maintain "100% integrity" on price changes.[35]

64. On information and belief, if a negative acknowledgement is received by the ESL computer, the Accused ESL System transmits at least one message to the ESL to update the ESL's

---

[33] *Id.*
[34] https://www.digisystem.com/us/products/PRD00261/ (last visited June 1, 2018).
[35] *Id.* and https://www.slideshare.net/OuzGARSLAN/digi-esl at slide 17 (last visited June 1, 2018).

registers with the data image contained in the ESL data file. As described in the product literature, and as shown in FIG. 8 below, the Accused ESL System transmits at least one message to the ESL to update the registers, *e.g.*, to the intended price, if a negative acknowledgment is received by the ESL computer, and causes the ESL to display intended information, *e.g.*, the intended price, and thereby ensure "100% integrity" on price changes.[36]




FIG. 8

65. On information and belief, Defendant Digi, either alone or in conjunction with others, has in the past and continues to infringe and/or induce the infringement of at least claim 1 of the '133 patent by making, using, selling, offering to sell, and/or importing, or causing others to make, use, sell, or offer to sell, and/or import, in this judicial district and/or elsewhere in the United States, the Accused ESL System that alone or in use is covered by at least claim 1 of the '133 patent.

[36] https://www.slideshare.net/OuzGARSLAN/digi-esl at slides 6 and 17.

66. As set forth above, Defendant Digi directly infringes at least claim 1 of the ’133 patent in violation of 35 U.S.C. § 271(a) by operating the Accused ESL System in a manner that performs the method required by claim 1 of the ’133 patent.

67. Defendant Digi provides instructions including, but not limited to, product and instruction manuals, that instruct how to use the Accused ESL System in a manner that infringes at least claim 1 of the ’133 Patent. At least from the time of receipt of the complaint, Defendant Digi has provided such instructions with knowledge that such activities encourage users to operate the Accused ESL System in a manner that directly infringes the ’133 patent.

68. On information and belief, Defendant Digi indirectly infringes at least claim 1 of the ’133 patent in violation of 35 U.S.C. § 271(b) by inducing users of the Accused ESL System to directly infringe at least claim 1 by causing the Accused ESL System to operate in accordance with Digi’s instructions according to the method of claim 1 of the ’133 patent.

69. Therefore, Defendant Digi infringes at least claim 1 of the ’133 patent in violation of 35 U.S.C. § 271.

70. Plaintiff has been harmed and continues to be harmed by Defendant Digi’s past and ongoing infringement of the ’133 patent.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 7,340,412

71. NCR incorporates by reference the allegations in paragraphs 1 through 70 as if fully set forth herein.

72. On information and belief, Defendant Digi has infringed at least claim 1 of the ’412 patent by importing, using, directing others to use, offering for sale, and/or selling ESL systems, including but not limited to the Accused ESL System, that perform the method of at least claim 1 of the ’412 patent in the United States.

73. Claim 1 of the '412 patent recites:

A computerized method of performing a delta update of an electronic shelf label (ESL) comprising:

(a) comparing a first data image including a first table of a plurality of registers of said ESL and current contents of said registers with a second data image including a second table of said registers and planned contents of said registers to determine a number of said registers less than all of said registers whose planned contents are different than corresponding current contents;

(b) creating a third data image including a third table with only said number of registers and corresponding planned contents by the ESL manager program;

(c) sending the third data image to a CBS manager program; and

(d) scheduling a message for transmission to the ESL updating only the number of said registers to include corresponding planned contents from the third data image by the CBS manager program.

74. On information and belief, the Accused ESL System performs a computerized method of performing a delta update of an ESL. As described in the product literature, the Accused ESL System performs a computerized method of performing a delta update of an ESL, for example, by changing some, but not all of the ESL's data, such as just the price.[37]

75. On information and belief, the Accused ESL System compares a first data image including a first table of a plurality of registers of said ESL and current contents of said registers with a second data image including a second table of said registers and planned contents of said registers to determine a number of said registers less than all of said registers whose planned

[37] *Id.* at Slide 10.

contents are different than corresponding current contents. As described in the product literature, the Accused ESL System prepares a message for transmission to the ESL reflecting only the changes to the current ESL data, *e.g.*, a price change, to reduce the size of the message to be transmitted and thereby efficiently manage available bandwidth, minimize the time required to transmit the message, and maximize a battery life span of the ESL, which varies with the frequency of updates and the size of the transmitted message.[38] As such, on information and belief, the Accused ESL System compares current data with planned updated data.[39] The current data corresponds to a first data image including a first table of a plurality of registers of an ESL and current contents of the registers, which contents include, for example, information about a product currently being displayed by the ESL, such as its name and a current price. The planned data corresponds to a second data image including a second table of the plurality of registers and planned contents of the registers, which planned contents include, for example, information about the product currently being displayed by the ESL, such as its name and a planned price.[40] On information and belief, the Accused ESL System compares the current data with the planned updated data to determine a number of the registers less than all of the registers whose planned contents, *e.g.*, the planned price, are different than corresponding current contents, *e.g.*, the current price in order to prepare a message for transmission to the ESL reflecting only the changes to the current information, *e.g.*, the planned price.[41]

76. On information and belief, the Accused ESL System creates a third data image including a third table with only said number of registers and corresponding planned contents by

---

[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*

the ESL manager program. To achieve the benefits associated with creating a reduced size message for transmission to the ESL described with respect to the preceding comparing step, including efficiently managing available bandwidth, minimizing the time required to transmit the message, and maximizing battery life span, on information and belief, the Accused ESL System creates a third data set based on the above comparison, the third data set including a third table representing only those registers whose planned contents, *e.g.*, the planned price, are different than the current contents, *e.g.*, the current price.

77. On information and belief, the Accused ESL System sends the third data image to a CBS manager program. As described in the product literature, and as shown in FIG. 8 above, the Accused ESL System sends the third data image to a CBS manager program executed on, *e.g.*, a POS Server (which can be programmed to send the third data image to a radio-frequency (RF) Station for transmission to the ESL), in order for such data, including the planned price, to be transmitted to the ESL to complete the update, *e.g.*, a price change.[42]

78. On information and belief, the Accused ESL System schedules a message for transmission to the ESL to update only the number of said registers to include corresponding planned contents from the third data image by the CBS manager program. As described in the product literature, and as shown in FIG. 8 above, the message updates only the registers to include corresponding planned contents from the third data image, *e.g.*, a price change. The Accused ESL System schedules the message for transmission to the ESL by the CBS program manager executing on, *e.g.*, the POS Server, through the use of one or more RF Stations in order to complete the

[42] *Id.* at Slide 6.

update and display the changed price. As described in the product literature, the "RF Station [s]earch[es] [a]nd [s]end[s] [t]he Identified Tag ID [w]ith [p]roduct [c]ontent such [a]s [p]rice."[43]

79. On information and belief, Defendant Digi, either alone or in conjunction with others, has in the past and continues to infringe and/or induce the infringement of at least claim 1 of the '412 patent by making, using, selling, offering to sell, and/or importing, or causing others to make, use, sell, or offer to sell, and/or import, in this judicial district and/or elsewhere in the United States, the Accused ESL System that alone or in use is covered by at least claim 1 of the '412 patent.

80. As set forth above, Defendant Digi directly infringes at least claim 1 of the '412 patent in violation of 35 U.S.C. § 271(a) by operating the Accused ESL System in a manner that performs the method required by claim 1 of the '412 patent.

81. Defendant Digi provides instructions including, but not limited to, product and instruction manuals, that instruct how to use the Accused ESL System in a manner that infringes at least claim 1 of the '412 patent. At least from the time of receipt of the complaint, Defendant Digi has provided such instructions with knowledge that such activities encourage users to operate the Accused ESL System in a manner that directly infringes the '412 patent.

82. On information and belief, Defendant Digi indirectly infringes at least claim 1 of the '412 patent in violation of 35 U.S.C. § 271(b) by inducing users of the Accused ESL System to directly infringe at least this claim by causing the Accused ESL System to operate in accordance with Digi's instructions according to the method of claim 1 of the '412 patent.

83. Therefore, Defendant Digi infringes at least claim 1 of the '412 patent in violation of 35 U.S.C. § 271.

---

[43] *Id.*

84. Plaintiff has been harmed and continues to be harmed by Defendant Digi's past and ongoing infringement of the '412 patent.

**COUNT V**
**INFRINGEMENT OF U.S. PATENT NO. 6,976,206**

85. NCR incorporates by reference the allegations in paragraphs 1 through 84 as if fully set forth herein.

86. On information and belief, Defendant Digi has infringed at least claim 1 of the '206 patent by importing, using, directing others to use, offering for sale, and/or selling ESL systems, including but not limited to the Accused ESL System, that perform the method of at least claim 1 of the '206 patent in the United States.

87. Claim 1 of the '206 patent recites:

A method of performing an intelligent bedcheck of an electronic shelf label (ESL) comprising the steps of:

(a) displaying informational text by the ESL, said ESL including a plurality of registers;

(b) providing an ESL data file stored in a host computer system comprising the intended contents of said plurality of registers;

(c) determining by the host computer system a subset of said plurality of registers containing both said informational text and data controlling the display of said informational text; and

(d) verifying that the intended contents of said subset of the registers matches the actual contents of said subset of registers.

88. The Accused ESL System performs an intelligent bedcheck of an ESL. As described in the product literature, on information and belief, the Accused ESL System performs an intelligent bedcheck of an ESL in order to verify that the actual ESL contents, *e.g.*, the stored

price, match the intended contents, *e.g.*, the intended price, and ensure "100% integrity" on price changes.[44]

89. The Accused ESL System displays informational text by the ESL that includes a plurality of registers. As described in the product literature, the Accused ESL System displays on an ESL informational text, *e.g.*, "Monthly Special" of "$15.99" for "Australian Thawed Prawns," which is stored in a plurality of registers, *e.g.*, memory locations, at the ESL.[45]

90. The Accused ESL System provides an ESL data file comprising intended contents of said plurality of registers stored in a host computer system. As described in the product literature and as shown in FIG. 8 above, on information and belief, a POS server of the Accused ESL System, *e.g.*, a host computer system, provides, and therefore stores, an ESL data file comprising the intended contents of the plurality of registers.[46]

91. On information and belief, the Accused ESL System determines by the host computer system a subset of said plurality of registers containing both said informational text and data controlling the display of said informational text. As described in the product literature and as shown in FIG. 6 above, the POS server of the Accused ESL System, *e.g.*, the host computer, determines a subset of the plurality of ESL registers containing both informational text and data controlling the display of the text, *e.g.*, "Monthly Special" displayed in reverse print and "$15.99" displayed in standard print, for verification pursuant to the next element.[47]

92. The Accused ESL System verifies that the intended contents of said subset of the registers matches the actual contents of said subset of registers. As described in the product

[44] *Id.* at Slide 17 and https://www.digisystem.com/us/products/PRD00261/ (last visited June 1, 2018).
[45] *Id.* at Slide 6.
[46] *Id.* at Slide 6.
[47] *Id.* at Slide 6.

literature, the Accused ESL System verifies that the intended contents of the subset of the registers matches the actual contents, *e.g.*, a "Monthly Special" of "$15.99", and thereby ensure "100% integrity" on price changes.[48] Verifying the contents of a subset – as opposed to all – of the information and data stored at the ESL is desirable to efficiently manage bandwidth, minimize communication time, and maximize battery life span, which varies with communication frequency and size.

93. On information and belief, Defendant Digi, either alone or in conjunction with others, has in the past and continues to infringe and/or induce the infringement of at least claim 1 of the '206 patent by making, using, selling, offering to sell, and/or importing, or causing others to make, use, sell, or offer to sell, and/or import, in this judicial district and/or elsewhere in the United States, the Accused ESL System that alone or in use is covered by at least claim 1 of the '206 patent.

94. As set forth above, Defendant Digi directly infringes at least claim 1 of the '206 patent in violation of 35 U.S.C. § 271(a) by operating the Accused ESL System in a manner that performs the method required by claim 1 of the '206 patent.

95. Defendant Digi provides instructions including, but not limited to, product and instruction manuals, that instruct how to use the Accused ESL System in a manner that infringes at least claim 1 of the '206 patent. At least from the time of receipt of the complaint, Defendant Digi has provided such instructions with knowledge that such activities encourage users to operate the Accused ESL System in a manner that directly infringes the '206 patent.

[48] *Id.* at Slide 6 and https://www.digisystem.com/us/products/category/002/ (last visited June 1, 2018).

96. On information and belief, Defendant Digi indirectly infringes at least claim 1 of the ’206 patent in violation of 35 U.S.C. § 271(b) by inducing users of the Accused ESL System to directly infringe at least this claim by causing the Accused ESL System to operate in accordance with Digi’s instructions according to the method of claim 1 of the ’206 patent.

97. Therefore, Defendant Digi infringes at least claim 1 of the ’206 patent in violation of 35 U.S.C. § 271.

98. Plaintiff has been harmed and continues to be harmed by Defendant Digi’s past and ongoing infringement of the ’206 patent.

## COUNT VI
## INFRINGEMENT OF U.S. PATENT NO. 7,007,219

99. NCR incorporates by reference the allegations in paragraphs 1 through 98 as if fully set forth herein.

100. On information and belief, Defendant Digi has infringed at least claim 1 of the ’219 patent by importing, using, directing others to use, offering for sale, and/or selling ESL Systems, including but not limited to the Accused ESL System, that perform the method of at least claim 1 of the ’219 patent in the United States.

101. Claim 1 of the ’219 patent recites:

A method of automatically detecting and correcting communication errors which result in incorrect storage of data in an electronic shelf label's (ESL’s) registers, the method comprising the steps of:

(a) transmitting an initial message from a host computer to the ESL;

(b) waiting for a response to the initial message;

(c) if the response is a negative acknowledgement or no response is received by the host computer, retransmitting the initial message;

(d) if the response is interpreted by the host computer as a positive acknowledgement, transmitting a verification message to verify the contents of the ESL's registers;

(e) waiting for a response to the verification message; and

(f) if the response to the verification message indicates that the contents of the ESL's registers match the expected contents as maintained by the host computer, logging the initial message as successfully received.

102. The Accused ESL System detects and corrects communication errors resulting from in incorrect storage of data in ESL registers. As described in the product literature, the Accused ESL System performs a method of automatically detecting and correcting communication errors which result in incorrect storage of data in an ESL's registers so as to ensure "100% integrity" on price changes.[49]

103. The Accused ESL System transmits an initial message from a host computer to the ESL. As described in the product literature and as shown in FIG. 8 above, the POS server of the Accused ESL System, *e.g.*, a host computer, transmits an initial message, *e.g.*, a price change, to the ESL through, *e.g.*, an RF Station.[50] "STEP 1 . . . . RF Station Server Receive POS file for price change" and "STEP 2 . . . . RF Station Search and Send The Identified Tag ID With Product Content such as price[.]"[51]

104. The Accused ESL System waits for a response to the initial message. As described in the product literature and as shown in FIG. 8 above, the Accused ESL System waits for a response, *e.g.*, an acknowledgement, to the initial message, *e.g.*, a price change, which

[49] https://www.slideshare.net/OuzGARSLAN/digi-esl at slide 17.
[50] *Id.* at Slide 6.
[51] *Id.* at Slide 6.

acknowledgement is sent from the ESL to the RF Station so as to ensure "correct information and feedback."[52] "STEP 3 . . . . InfoTag Acknowledge The Received Content And Respond Back To RF Station."[53]

105. On information and belief, the Accused ESL System retransmits the initial message if the response is a negative acknowledgement or no response is received by the host computer. As described in the product literature and as shown in FIG. 8 above, the POS computer of the Accused ESL System, *e.g.*, the host computer, retransmits the initial message, *e.g.*, a price change, to ensure that the system achieves "100% integrity" with respect to price changes if the response is a negative acknowledgment or no acknowledgement is received by the POS Server.[54]

106. On information and belief, the Accused ESL System transmits a verification message to verify the contents of the ESL's registers if the response is interpreted by the host computer as a positive acknowledgement. As described in the product literature and as shown in FIG. 9 below, the Accused ESL System utilizes wireless protocols, which have inherently high bit error rates, and as such, the Accused ESL System transmits a verification message to an ESL in response to a positive acknowledgement to verify that the ESL contents match the expected content, *e.g.*, resulting from a price change.[55]

---

[52] *Id.* at Slide 6 and https://www.digisystem.com/us/products/category/002/ (last visited June 1, 2018).
[53] *Id.*
[54] https://www.slideshare.net/OuzGARSLAN/digi-esl at slides 6 and 17.
[55] https://www.slideshare.net/OuzGARSLAN/digi-esl at slide 17 and https://www.digisystem.com/us/products/category/002/ (last visited June 1, 2018).




FIG. 9

107. The Accused ESL System waits for a response to the verification message. As described in the product literature, following the sending of a verification message, the Accused ESL System waits for a response, *e.g.*, a positive acknowledgement, so as to ensure it has "correct information and feedback" and achieves "100% integrity" on a price change.[56]

108. On information and belief, the Accused ESL System logs the initial message as a successfully received if the response to the verification message indicates that the contents of the ESL's registers match the expected contents as maintained by the host computer. As described in the product literature and on information and belief, the Accused ESL System logs the initial

[56] *Id.* at Slide 17 and *Id.*

message, *e.g.*, the price change, as successfully received in response to the received verification message indicating the contents of the ESL's registers match the expected contents so as to enable confirmation of "100% integrity" of the content, *e.g.*, as a result of a price change.[57]

109. On information and belief, Defendant Digi, either alone or in conjunction with others, has in the past and continues to infringe and/or induce the infringement of at least claim 1 of the '219 patent by making, using, selling, offering to sell, and/or importing, or causing others to make, use, sell, or offer to sell, and/or import, in this judicial district and/or elsewhere in the United States, the Accused ESL System that alone or in use is covered by at least claim 1 of the '219 patent.

110. As set forth above, Defendant Digi directly infringes at least claim 1 of the '219 patent in violation of 35 U.S.C. § 271(a) by operating the Accused ESL System in a manner that performs the method required by claim 1 of the '219 patent.

111. Defendant Digi provides instructions including, but not limited to, product and instruction manuals, that instruct how to use the Accused ESL System in a manner that infringes at least claim 1 of the '219 patent. At least from the time of receipt of the complaint, Defendant Digi has provided such instructions with knowledge that such activities encourage users to operate the Accused ESL System in a manner that directly infringes the '219 patent.

112. On information and belief, Defendant Digi indirectly infringes at least claim 1 of the '219 patent in violation of 35 U.S.C. § 271(b) by inducing users of the Accused ESL System to directly infringe at least this claim by causing the Accused ESL System to operate in accordance with Digi's instructions according to the method of claim 1 of the '219 patent.

---

[57] https://www.slideshare.net/OuzGARSLAN/digi-esl at slide 17.

113. Therefore, Defendant Digi infringes at least claim 1 of the ’219 patent in violation of 35 U.S.C. § 271.

114. Plaintiff has been harmed and continues to be harmed by Defendant Digi’s past and ongoing infringement of the ’219 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, NCR prays for the following judgment and relief against Defendants:

(a) A judgment that Defendant Teraoka has infringed and is infringing the ’727 patent and Defendant Digi has infringed and is infringing the ’694, ’727, ’133, ’412, ’206, and ’219 patents;

(b) A judgment that Defendants’ infringement was willful;

(c) A permanent injunction against Defendants and their affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with Defendants from infringing the ’694, ’727, ’133, ’412, ’206, and ’219 patents;

(d) An award of all damages adequate to compensate NCR for Defendants’ patent infringement, such damages to be determined by a jury, and if necessary an accounting to adequately compensate NCR for the infringement;

(e) An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

(f) A trebling of damages due to Defendants’ willful infringement;

(g) An order finding that this is an exceptional case and awarding NCR its costs, expenses, disbursements, and reasonable attorneys’ fees related to Defendants’ infringement under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law; and

(h) Such further and other relief as this Court deems proper and just.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38.1, NCR respectfully demands a jury trial of all issues triable to a jury in this action.

## CERTIFICATION

Pursuant to Local Rule 11.2, the undersigned certifies that the matter in controversy between the parties herein is not the subject of any other action pending in any court or any arbitration proceeding, and that no other action or arbitration proceeding with respect to the matter in controversy is contemplated.

Dated: July 11, 2018

Respectfully submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Kevin M. Capuzzi*
Kevin M. Capuzzi (#173442015)
411 Hackensack Avenue, 3rd Floor
Hackensack, NJ 07601
Telephone: 302-442-7063
Facsimile: 302-442-7012
Email: kcapuzzi@beneschlaw.com

Kalpesh K. Shah (*pro hac forthcoming*)
Manish K. Mehta (*pro hac forthcoming*)
Igor D. Ozeruga (*pro hac forthcoming*)
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.757.9192
Email: kshah@beneschlaw.com
Email: mmehta@beneschlaw.com
Email: iozeruga@beneschlaw.com

*Attorneys for Plaintiff NCR Corporation*